AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
4/17/25
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MRV _____ DEPUTY



**FILED**
CLERK, U.S. DISTRICT COURT
04/17/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ GR ____ DEPUTY

| | |
|---|---|
| United States of America | |
| v. | Case No.  2:25-mj-02314-DUTY |
| KEITH CALLUM, | |
| Defendant(s) | |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 5, 2025 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Calvin Hill*
*Complainant's signature*

Calvin Hill, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   April 17, 2025

*Karen L. Stevenson*
*Judge's signature*

City and state:   Los Angeles, California        Hon. Karen L. Stevenson, U.S. Magistrate Judge
*Printed name and title*

AUSA: Max A. Shapiro (x7419)

## AFFIDAVIT

I, CALVIN HILL being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint and arrest warrant against Keith Callum ("CALLUM") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

2.    This affidavit is also made in support of an application for a warrant to search the person of CALLUM, as described more fully in Attachment A.

3.    The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 922(g)(1) (Felon in Possession of a Firearm and Ammunition) (the "Subject Offense"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

1

## II. <u>BACKGROUND OF AFFIANT</u>

5.    I am a Deputized Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to Los Angeles Field Division, where I investigate cases involving the illegal use, sale, and possession of firearms and narcotics.

6.    I have been employed by the City of Los Angeles as a law enforcement officer for approximately fifteen years.  During my tenure, I have participated in the investigation, surveillance, and arrest of numerous firearms and drug traffickers.  I have written and participated in the execution of several state warrants and participated in several federal search and arrest warrants in investigations related to violations of federal and state firearms and narcotics laws.

7.    I have also received training in state and federal firearms and narcotics laws, confidential source handling, drug identification, and various surveillance and investigative techniques.  I also consult regularly with experienced investigators concerning the methods and practices of firearms and narcotics traffickers.  I have become familiar with the efforts of individuals engaged in the importation, smuggling, manufacturing, distribution, and sale of firearms and narcotics to avoid detection and apprehension by law enforcement officers.

## III. <u>SUMMARY OF PROBABLE CAUSE</u>

8.    On or about April 5, 2025, Los Angeles Police Department ("LAPD") officers arrested CALLUM, a convicted felon, following a traffic stop.  During the investigation, the

officers located and seized a serialized, 9mm, semi-automatic handgun loaded with 9mm ammunition from CALLUM's vehicle. Law enforcement determined the firearm and ammunition were manufactured outside the state of California. A subsequent investigation revealed that the firearm was stolen during a 2024 residential burglary within the city of Los Angeles.

## IV. STATEMENT OF PROBABLE CAUSE

9.   Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own knowledge of the investigation, I am aware of the following:

**A.   LAPD Officers conduct a traffic stop for an infraction.**

10.   On or about April 5, 2025, at approximately 11:50 p.m., LAPD patrol officers were on duty in their marked black and white vehicle in the area of Paxton Street and Foothill Boulevard in the city and county of Los Angeles.

11.   Officers observed a black Mercedes Benz sedan driving eastbound on Paxton Street, driving without its forward-facing headlight, in violation of California Vehicle Code § 24250. Officers initiated a traffic stop on the vehicle in the area of Foothill Boulevard and the 210 freeway offramp.

12.   Upon making contact with the driver, officers informed CALLUM the reason for the stop and requested his driver's license. The driver gave the officer his driver's license, which identified the driver as Keith CALLUM.

13.   While speaking with CALLUM, the officers observed a plastic bag containing what appeared to be marijuana in the

passenger seat area of the vehicle.  Officers also observed smaller plastic baggies, which based on my training and experience I know are commonly used to individually package narcotics for the purpose of illegal sales.  Due to the officers' observations, the officers ordered CALLUM to exit the vehicle and detained him while they conducted their investigation.  As CALLUM exited the vehicle, officers observed a small digital scale in the driver's door panel, which based on my training and experience, is also commonly used by distributors of narcotics to measure the amount of the drug they intend to distribute.

14.  Utilizing department resources, the officers discovered that CALLUM was on formal probation for Second Degree Robbery in violation of California Penal Code § 211.  The officers also verified that the terms of his probation included search conditions.  Specifically, they confirmed that his search conditions stated, in relevant part, "Submit your person and property to search and seizure at any time of the day or night, by any probation officer or other peace officer, with or without a warrant, probable cause, or reasonable suspicion."

**B.    Officers Search CALLUM's Vehicle and Locate a Firearm.**

15.  While CALLUM was detained near his vehicle, officers conducted a probation compliance search of CALLUM's vehicle. During the search, officers discovered that the glove box of the vehicle was locked and required a key.  Due to the fact that no glove box key was present on CALLUM's key ring, the officers asked CALLUM if he knew what was in the glove box and how to

unlock it.  CALLUM denied any knowledge of the glovebox's contents and of where the glovebox key was.

16.  Based on their training and experience, the officers believed that CALLUM was likely attempting to conceal the key to the glovebox on his person.  As a result, placed CALLUM in the back of the police vehicle, removed his shoes and conducted a search of his shoes and feet.

17.  While manipulating the CALLUM's right foot and sock, the officer felt what appeared to be a key.  Hidden within CALLUM's sock, directly under his foot, officers then recovered the key.

18.  Officers took the key and were able to successfully unlock the glovebox.  Inside, the officers located an unsecured firearm, specifically a Smith and Wesson, M&P Shield, 9mm, semi-automatic handgun, bearing serial number JRT5944, with a seated corresponding magazine containing seven rounds of 9mm caliber ammunition.

19.  Officers arrested CALLUM and booked the firearm, magazine, and ammunition into evidence.

    **C.    CALLUM's Criminal History**

20.  I have reviewed CALLUM's criminal history records and learned that he has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

        a.    On or about February 06, 2024, CALLUM was convicted of ROBBERY, in violation of California Penal Code §

211, in the Superior Court of the State of California, County of Los Angeles, case number 24PDCF00066.

b.    On or about November 28, 2018, CALLUM was convicted of BURGLARY, in violation of California Penal Code § 459, in the Superior Court of the State of California, County of Los Angeles, case number XNEGA107919.

c.    On or about December 17, 2018, CALLUM was convicted of BURGLARY, in violation of California Penal Code § 459, in the Superior Court of the State of California, County of Ventura, case number 2018028483.

**D.    Interstate Nexus.**

21.    On April 16, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives, Interstate Nexus Expert, Special Agent Tiffany Lamphere examined information provided to her regarding the ammunition and firearms seized from CALLUM. SA Lamphere confirmed that the ammunition and firearms were manufactured outside of the State of California. Because the ammunition was found in California, they had to have traveled in and affected interstate commerce.

**V.  TRAINING AND EXPERIENCE ON FIREARMS OFFENSES**

22.    From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

a.    Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in

places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices.

b.    Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

c.    Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these

photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

23. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

24.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data

during a search of the premises for a number of reasons,
including the following:

     a.    Digital data are particularly vulnerable to
inadvertent or intentional modification or destruction.  Thus,
often a controlled environment with specially trained personnel
may be necessary to maintain the integrity of and to conduct a
complete and accurate analysis of data on digital devices, which
may take substantial time, particularly as to the categories of
electronic evidence referenced above.  Also, there are now so
many types of digital devices and programs that it is difficult
to bring to a search site all of the specialized manuals,
equipment, and personnel that may be required.

     b.    Digital devices capable of storing multiple
gigabytes are now commonplace.  As an example of the amount of
data this equates to, one gigabyte can store close to 19,000
average file size (300kb) Word documents, or 614 photos with an
average size of 1.5MB.

     25.    The search warrant requests authorization to use the
biometric unlock features of a device, based on the following,
which I know from my training, experience, and review of
publicly available materials:

     a.    Users may enable a biometric unlock function on
some digital devices.  To use this function, a user generally
displays a physical feature, such as a fingerprint, face, or
eye, and the device will automatically unlock if that physical
feature matches one the user has stored on the device.  To
unlock a device enabled with a fingerprint unlock function, a

user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

c.    Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress CALLUM's thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of CALLUM's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

d.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. <u>CONCLUSION</u>

For all of the reasons described above, there is probable cause to believe that CALLUM has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and

Ammunition.  There is also probable cause that the items to be seized described in Attachment B will be found in a search of the CALLUM's persons described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 17th day of
April, 2025.

_____
THE HONORABLE KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE